Louis **RISKE** and Jerry Riske, Plaintiffs,

v.

**TRUCK INSURANCE EXCHANGE,**
a corporation, Defendant.

**Civ. No. 4658.**

United States District Court,
D. North Dakota,
Northeastern Division.

Dec. 18, 1972.

Kenneth M. Moran, Jamestown, N. D., Garry A. Pearson, Grand Forks, N. D., for plaintiffs.

Mart R. Vogel, Wattam, Vogel, Vogel & Peterson, Carlton J. Hunke, Fargo, N. D., for defendant.

## MEMORANDUM OF DECISION AND ORDER

BENSON, Chief Judge.

The instant action before this Court arises from a personal injury suit entitled Ngan v. Riske. The defendants in that case, Louis and Jerry Riske, were sued for an amount in excess of their insurance policy limits of $50,000.00. The lawsuit was tried in the United States District Court for the District of North Dakota at Grand Forks, in October, 1970. Minnesota law was applied. Judgment was returned for Cynthia Ngan, and against the Riskes for $180,000.00.

Now comes Louis and Jerry Riske as plaintiffs by agreement with Cynthia Ngan, in an action against the insurance company that held the Riske policy, praying for damages equal to the verdict in the Ngan case in excess of the policy limits. Here, the Riskes charged that the insurer, Truck Insurance Exchange, Reciprocal Inter Insurance Exchange, through its attorney in fact, Truck Underwriters Association, having pursuant to the terms of their insurance contract, undertaken to defend them in the Ngan-Riske lawsuit did not act in good faith in failing to adequately defend them, in failing to settle within the policy limits, and in failing to properly inform the plaintiffs of the risk of an excess verdict.

The defendant denied lack of an intelligent and honest effort to protect the insured, denied that it knew or should have known of the probability of a verdict in excess of the policy coverage, and denied that it was guilty of bad faith.

The case was tried to a jury. At the close of the plaintiffs' evidence, the defendant moved for dismissal under Rule 41(b), Federal Rules of Civil Procedure. At the close of all the evidence, the defendant moved for a directed verdict under Rule 50(a). The motions were resisted, and the Court reserved its decision on both motions, allowing the case to go to the jury. A verdict for the plaintiffs was returned.

On reviewing the evidence, the Court concludes the motions should have been granted.

Addressed to the legal sufficiency of the evidence, the grounds for the motions were expressed as follows:

" . . . Plaintiffs have shown no right to relief because they have failed to prove, one, that the Defendant breached any duty owed to them because (a) there was no effective offer to settle within the policy limits, and thus no reasonable way the case could have been settled under the policy limits; (b) there has been no evidence of bad faith; and (2) because the Plaintiffs have failed to prove that they have sustained any damages."

On the motion for directed verdict, defendant asserted the additional ground that the defendant had proved that it acted in good faith.

Cynthia Ngan's claim arose out of an accident on the Riske farm in Minnesota, near East Grand Forks, on February 11, 1968. Ngan was an exchange student from Hong Kong, attending the University of North Dakota. She had never rode on a snowmobile prior to that time. A male friend of her sister made arrangements with Jerry Riske, son of Louis Riske, the named insured, to take all of them snowmobiling around Riske's farm on a Sunday afternoon. Two

snowmobiles, both owned by Louis Riske, were used, with the owner's permission. One was an eight horsepower "Arctic Cat" machine, manufactured by Arctic Enterprises, Inc., from which the back rest had been broken off.

The visitors to the Riske farm spent a social afternoon with other members of the Riske family, including lunch and rides on both machines.

On her third ride, Ngan was on the Arctic Cat machine being operated by Jerry Riske. She fell off when he drove it over a bump, and her right hand and arm became entangled in the mechanical track of the machine.

Her injury was described by her physician as follows:

"The patient received extensive wounds involving the right forearm with fractures of the radius and ulna and with extensive lacerations involving the hand with deep compound fractures of the 2nd, 3rd, 4th, and 5th metacarpals and complete disruption of the tissues of the ulnar side of the hand with circumferential wounds about the palm of the hand.

The patient had surgery on the evening of admission with debridement of the wounds, reduction of the fractures, and closure of the wounds with an effort made to try to save the hand and the fingers of the hand. Due to the extensive trauma to the blood supply, however, the fifth finger subsequently became necrotic and gangrenous and it was necessary to amputate the fifth finger as well as the distal portion of the fifth metacarpal at the fracture site. The tip of the fourth finger likewise became gangrenous and this tip was removed. However, the majority of the fourth finger was saved. The long and index fingers healed satisfactorily. Patient later required skin grafting on the palm of the hand to close the wound."

She lost "full extension power in the ring finger from the proximale interphalangeal joint on". The finger assumed a "claw like" appearance.

Cynthia Ngan subsequently brought an action against Louis Riske, Jerry Riske and Arctic Enterprises, Inc., for her damages arising out of the accident. She alleged the Riskes were negligent and her cause of action against Arctic Enterprises, Inc., was a products liability claim based on negligence, breach of warranty, and strict liability.

The jury found Cynthia Ngan to have been damaged in the amount of $200,000.00. Under the comparative negligence law of Minnesota, it found Jerry Riske to have been 45% negligent, Louis Riske 45% negligent, Cynthia Ngan 10% negligent, and Arctic Enterprises, Inc., free of negligence, and further found the snowmobile not to have been in a defective condition and unreasonably dangerous to users at the time it was placed in commerce. Judgment was entered for $180,000.00, and the defendant herein paid the full policy coverage.

## PREPARATION AND CONDUCT OF TRIAL

In considering the defendant's motion, this Court must view the evidence in the light most favorable to the plaintiffs.

■ Negligence on the part of the defendant in the investigation of the claim and its preparation for trial and conduct of the trial may be evidence of bad faith. See Ferris v. Employers Mutual Casualty Co., 255 Iowa 511, 122 N. W.2d 263.

However, this Court concludes the evidence in the case is such that reasonable persons could reach no conclusion except that the Ngan claim was thoroughly investigated by the defendant and competently tried by a lawyer retained by the defendant, possessed of all of the reasonable knowledge and skill ordinarily possessed by other members of the profession in the area.

The evidence is clear that other than the verdict, there were no surprises at the Ngan trial, except for the opinion of her doctor at the trial, that she had a 60% permanent disability of her right arm. The defendant had not taken the

doctor's deposition, but did have his medical report which had been furnished to it by the plaintiff. As disclosed in the medical report, prior to trial, plaintiff's doctor had rated the disability at 25%. At trial, the doctor explained the difference as follows:

"The difference to me basically is what has happened since that time, how she has used the hand or not used the hand and the arm; and whereas the 25 per cent estimate might be more in line with the actual physical absence of the fifth finger and the physical lack of full function of the fourth finger and the weakness in the hand and so forth, I indicate 60 per cent would be just a general appraisal of Cynthia's use of this limb."

The doctor had a reputation for competency and integrity. Defendants had taken the plaintiff's pre-trial discovery deposition, and had observed her injured hand and arm and the use she made of it. The doctor's pre-trial medical report was consistent with their observations. If the failure to depose the doctor could be held to be negligence, it was not the kind of negligence which would be legal evidence of bad faith. See Ferris v. Employers Mutual Casualty Co., supra.

The only question remaining is whether there is evidence in the case to support a finding by the jury that there was bad faith, or a lack of good faith, on the part of the defendant in failing to effect a settlement of the Ngan claim within the policy limits.

## EVALUATION OF CLAIM

The test under the Minnesota law is whether or not the defense was evaluated in terms of the reasonable expectations that the defense will prevail, and the amount of the verdict if it does not. The settlement offers must be viewed in the light of these expectations, with equal consideration being given to the financial exposure of both the insured and the insurer. Herges v. Western Casualty and Surety Company, 408 F.2d 1157 (8 Cir. 1969).

The first question is whether the settlement offers were viewed in the light of expectations of the plaintiff prevailing, and in the light of the amount of the verdict if she did prevail. A fair evaluation of the evidence establishes the defendant hoped its insured, the Riskes, would prevail, but did not really expect both of them would. However, the evidence conclusively established that counsel for all of the parties expected that the co-defendant, Artic Enterprises, Inc., would be held liable. Cynthia Ngan's counsel anticipated a "substantial award" against Arctic. In the Ngan trial, plaintiff's expert witness, Torkelson, testified that in his opinion, the accident would have happened even if the back rest had been on the machine and further, that it was "a dangerously designed machine for the passengers". Everyone agreed Torkelson was an impressive witness. Arctic's counsel testified in the action now before this Court, that in view of Torkelson's testimony, he felt, at the time the Ngan case went to the jury, Arctic's chances of success were less than 50% because it would be for the jury to decide whether to accept the testimony of Arctic's expert or Ngan's expert.

If the testimony of Plaintiff Cynthia Ngan's expert engineering witness was accepted, the jury would have had to let Louis Riske out of the case, because the only evidence of his negligence was that he permitted the machine to be used without a back rest.

With respect to the issue of contributory negligence or assumption of risk on the part of Cynthia Ngan, there was substantial evidence. She had observed both machines. She knew the one didn't have a back rest. Her Oriental heritage did not permit her to hold on tightly to the operator. This reluctance to hold on tight was not communicated to the operator. She said she was afraid of speed. When the machine became stuck in the snow before going over the bump, Cynthia Ngan dismounted and got back on, despite her previous comment on speed.

On the other hand, the regional claims' manager for Riske's liability insurance carrier, the defendant herein, while evaluating the insured's case, recognized her contributory negligence as rather meaningless by his comment that when "this little China doll walks into the courtroom with this claw for an extremity, that we are going to find the jury in an extremely generous and sympathetic mood". With this evaluation, he asked for $25,000.00 authority. The general claims' manager did not concur in this evaluation, but evaluated the probable liability to their insured at $20,000.00.

Counsel for Arctic Enterprises, Inc., evaluated the Ngan claim at $40,000.00 to $50,000.00 if the plaintiff was successful, and not charged with negligence or assumption of risk. He placed the total settlement value of the case at $35,000.00.

Riskes' trial counsel provided by the insurance carrier, the defendant herein, evaluated a total jury verdict in the margin of $40,000.00 to $50,000.00, and the settlement value of the claim against his client at $20,000.00 to $25,000.00.

At time of trial, plaintiff Cynthia Ngan's counsel placed a settlement value of his client's case at $45,000.00.

■ All of the evaluations of the possible total verdict against all of the defendants prior to the submission of the case to the jury were within the Riske's policy limits.

## REQUIREMENT OF EQUAL CONSIDERATION

The next question is whether equal consideration was given to the financial exposure of the insured and the insurer. To answer this question, it is necessary to examine the evidence on whether the insured understood the potential consequences of what would happen if the verdict was in excess of his policy limits, and the potential conflict between the insured and the insurer, and then to examine the evidence on the settlement negotiations.

Viewing Louis Riske's testimony and all of the evidence on the question in the light most favorable to him, reasonable persons would have to conclude that Riske intelligently understood the consequences of an excess verdict. He admitted he understood the policy limits. He admitted the receipt of two "excess letters" written by his insurer, one when the summons and complaint was filed, and one when it was amended raising the plaintiff's demands. He had four and possibly five conferences with his personal attorney relative to the Ngan claim and her excess demands, and his need for an attorney, other than the insurer's attorney, to represent him. He elected not to retain his own attorney.

On the matter of settlement, Ngan's counsel, Pearson, admitted the only firm written offer of settlement he made prior to trial was a letter dated December 9, 1968, to the defendant's field claims' manager offering to settle the claim against Riske for $25,000.00, on the assumption that those were the policy limits. He offered to give a release and covenant not to sue. Later in the summer of 1969, he discussed settlement with the defendant's branch claims' manager, at which time he offered to settle, conditioned upon his client's approval, for $25,000.00. He was offered $8,500.00. Early in the summer of 1970, he was offered $15,000.00. He had by then discovered the true policy limits, and he advised Riske's insurer's counsel, he thought the case was worth $45,000.-00, and could get it either from Riske's insurer or Arctic. Never was a demand made that the Riske claim be settled for the policy limits.

Immediately prior to trial Ngan's counsel advised Arctic's local counsel that he wanted $45,000.00 for the entire lawsuit. Arctic had virtually unlimited coverage, but following a policy of not settling lawsuits, would settle for the costs of trial, which was about $2,500.00.

■ About the third day of trial, Ngan's counsel offered to settle her claim against Riske for $25,000.00 on a

covenant, provided the jury was not informed. He did not want the jury to know, for fear it would adversely affect his claim against Arctic. Louis Riske testified that he had never demanded that the case be settled. He was not advised of the Pearson letter of December, 1968, but he knew of the $15,000.00 offer. On the third day of the trial, he asked his insurance counsel what would happen if the jury came in over the policy limits. His testimony on this point was that his counsel stated the insurance company would have to pay it all, because they had an offer to settle within the policy limits and they failed to do so. Even though counsel's testimony on this point is very much different than Riske's, the evidence should be viewed on the assumption that Riske's version is correct.

The defendant's position is that it could not have legally accepted the one firm offer to settle, contained in the Pearson letter of December 9, 1968, because it was conditioned on the erroneous assumption of policy limits, and such a settlement could not be legally binding on Ngan. When policy limits were disclosed, the demand for the entire lawsuit increased from $25,000.00 to $45,000.00, and no further effort was made by Ngan's counsel to get Riske's insurer to settle for the policy limits.

The defendant also contends that to have accepted the covenant offered during the trial would have been a fraud on the jury and the Court.

As a matter of law, the defendant must be sustained on its position on these two offers of covenants.

Query, whether under the circumstances then existing, would good faith require the defendant to take up the total offer of $45,000.00 and settle within the policy limits? At the trial of the case before this Court, the defendant had two experienced trial lawyers testify as expert witnesses. One has a reputation as a plaintiff's lawyer, and the other as a defendant's lawyer. The one evaluated the total Ngan claim somewhere between $30,000.00 and $50,000.00, with a 30% to 60% probability of contributory negligence. He also evaluated Arctic's exposure as greater than that of Riskes.

The other evaluated the total claim between $25,000.00 and $35,000.00, with Arctic's exposure equal to Jerry Riske's exposure, and considerably greater than Louis Riske's exposure.

On the presentation of the plaintiffs' evidence in this case, their expert witness testified that the "case would bring in a verdict of $80,000.00 or perhaps as high as $100,000.00". After the decision on defendant's motion for dismissal was reserved, and on plaintiffs' rebuttal case, their expert refined his testimony to state that he felt the verdict would be solely against the Riskes, with no contributory negligence charged to Ngan.

If the defendants in this case were justified in reasonably believing Arctic Enterprises exposure as great as or greater than Riskes, and that Ngan would be charged with some degree of contributory negligence, the verdict at the highest evaluation of $100,000.00 would still have brought Riske's liability within the policy limits.

This Court does not attach much legal significance to Riske's reported conversation with defendant's trial counsel in the latter part of the Ngan trial relative to the consequences if a verdict came in over the policy limits. At best, it could be considered an admission of bad faith by an agent which would not be binding on his principal unless supported by some evidence. It might have caused Riske to forego a settlement demand within the policy limits. To settle, Riske's insurer would have had to pay the entire $45,000.00 and Arctic would be released. Riske was clearly not demanding this result because he did not deny the testimony of his trial counsel to the effect that, in response to one of the plaintiffs' counsel's demands during the trial, Riske said, in substance,

that I don't think I owe anyone that kind of money.

■ It is clear an insurer, while required to give equal consideration to the interests of its insured, may properly give consideration to its own interests. Tennessee Farmers Mutual Insurance Co. v. Wood, 6 Cir., 277 F.2d 21.

■ The evidence is clear that the defendant erred in its evaluation of the Ngan claim as against the Riskes, and as against the co-defendant, Arctic Enterprises, Inc. However, under the law of Minnesota, something more than a mere mistake is necessary to constitute bad faith, and something more than an error of judgment is necessary to create liability with respect to the act of an insurer under a policy by which it is not absolutely bound to make a settlement. Larson v. Anchor Casualty Company, 249 Minn. 339, 82 N.W.2d 376.

Reviewed in its entirety, this Court concludes as a matter of law, that the evidence is not sufficient to support a finding of lack of good faith on the part of the defendant and does establish the defendant would have rejected the settlement offer even if there had been no policy limits applicable.

## PLAINTIFFS' DAMAGES

The second point urged by the defendant on its motion for directed verdict is that the plaintiffs failed to prove they sustained damages. While it is not necessary for the court to decide that point, a comment is appropriate. This Court denied defendant's offer of proof (marked as Defendant's Exhibit 13), that following the Ngan trial, she entered into an agreement with the Riskes providing in return for their prosecuting this action against their insurance carrier, she would accept the results of the lawsuit as a full and complete release of her judgment against Riskes, even if she had no recovery. Over defendant's counsel's vigorous assertions, the offer of proof was denied, because the Court felt it was not relevant on the issue of good faith and its admission might be prejudicial to the plaintiff.

Looking at the case in perspective, the Court concludes the result of this ruling might actually have been prejudicial to the defendant. Arctic's counsel at the Ngan trial testified in the instant case, and plaintiffs' counsel cross examined him at length on the effect of an excess judgment on the insured. The matter had not been opened on direct examination, and all the evidence in the case indicated Riske understood the consequences.

Again, in his summation to the jury, plaintiffs' counsel referred to the consequences to the Riskes of an excess judgment, and contrasted the money the defendant was spending to defend itself in this case as against the money it spent defending the Riskes. There was no evidence at all to support an inference that defendant had "skimped" in its defense of the Riskes. The argument was obviously advanced to incite jury sympathy and prejudice.

If there was evidence to support a finding of lack of good faith, these trial tactics would not, in this court's opinion, be sufficient to warrant a new trial, but they may help explain the verdict in this case.

Defendant's motion for dismissal, by reason of the Court not having acted on it prior to the submission of the case to the jury, will be deemed to have been denied. The motion for directed verdict is granted.

It is ordered that the verdict of the jury is set side and judgment will be entered for the dismissal of the action, with costs to the defendant.