Louis **RISKE** and Jerry **Riske**, Appellants.

v.

**TRUCK INSURANCE EXCHANGE**, a corporation, Appellee.

No. 73–1066.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1973.

Decided Jan. 16, 1974.

Rehearing and Rehearing En Banc Denied Feb. 6, 1974.

Kenneth M. Moran, Jamestown, N. D., for appellants.

Mart R. Vogel, Fargo, N. D., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, and LAY and ROSS, Circuit Judges.

ROSS, Circuit Judge.

After a jury returned a verdict for Louis Riske and Jerry Riske, in the sum of $130,000, against Truck Insurance Exchange (Truck), the district court set aside the jury verdict and entered judgment for Truck. The Riskes appeal. We reverse and remand with instruction to reinstate the jury verdict and enter judgment for the Riskes in the sum of $130,000.

This case arises from a personal injury suit brought by Cynthia Ngan, an exchange student from Hong Kong, attending the University of North Dakota, against Jerry Riske and Louis Riske. Miss Ngan was injured when she was riding a snowmobile at the Riskes' farm in Minnesota. The snowmobile was an "Arctic Cat" model, manufactured by Arctic Enterprises, Inc. (Arctic). Miss Ngan was thrown from the snowmobile, and her right hand and arm became entangled in the track of the machine. The machine's back rest had broken off prior to the accident.

Miss Ngan subsequently brought suit against the Riskes and Arctic in the United States District Court for the District of North Dakota. She claimed the Riskes were negligent, and her action against Arctic was predicated on products liability, breach of warranty and strict liability. Truck defended the Riskes as required by their contract of liability insurance. Applying Minnesota law, the jury returned a verdict for Miss Ngan in the amount of $200,000. Under the comparative negligence law of Minnesota the jury found Jerry Riske to have been 45% negligent, Louis Riske 45% negligent, Miss Ngan 10% negligent, and declined to return a verdict against Arctic. Judgment was entered in Miss Ngan's favor for the sum of $180,000, and Truck paid the full policy coverage, which was $50,000.

Thereafter, the Riskes, pursuant to an agreement with Miss Ngan, brought suit against Truck alleging essentially that Truck had, in bad faith, refused to settle the lawsuit or otherwise consider the interests of the Riskes in good faith, and, secondly, that Truck had, in bad faith, negligently defended the Riskes. The jury agreed and awarded the sum of $130,000.

At the close of the plaintiffs' evidence the defendant moved for dismissal. At the close of all the evidence the defendant moved for directed verdict. The nature of the motions were that the Riskes had not shown effective offers to settle, the Riskes had not proven damages, and

the Riskes had not proven bad faith. The court expressly reserved decision on the motions until after the jury returned its verdict. On December 8, 1972, the jury returned a verdict for the Riskes. On December 18, 1972, the district court granted the earlier motion for a directed verdict, set aside the jury verdict and ordered that judgment be entered in favor of Truck. The court concluded that "the evidence is not sufficient to support a finding of lack of good faith on the part of the defendant . . . ." Riske v. Truck Insurance Exchange, 351 F.Supp. 760, 766 (D.N. D.1972).

As we have noted before, the Riskes sought to recover on two theories: 1) bad faith failure to settle, and, 2) bad faith defense. Since we believe the evidence was sufficient to support the jury's verdict on the first theory, we need not reach the question of whether the evidence was sufficient to support the second.

A. *Standard of Review.*

█ In reviewing questions relating to the sufficiency of the evidence, it is clear that Minnesota law, North Dakota law, and federal law all require that this Court view the evidence and any inferences which may be reasonably drawn therefrom in the light most favorable to the nonmoving party. *See, e. g.,* Ziegler v. National Life & Accident Insurance Co., 441 F.2d 869, 870 (8th Cir. 1971); Steel v. Downs, 438 F.2d 310, 311 (8th Cir. 1971); Hanson v. Ford Motor Co., 278 F.2d 586, 589–599 (8th Cir. 1960). *See also* Giordano v. Lee, 434 F.2d 1227, 1231 (8th Cir. 1970), cert. denied, 403 U.S. 931, 91 S.Ct. 2250, 29 L.Ed.2d 709 (1971). *See generally,* 9 C. Wright & A. Miller, Federal Practice and Procedure § 2524 at 541–547 (1971).

B. *Applicable Law.*

█ The district court in this diversity case applied Minnesota substantive law. Applying the forum state's conflict of laws rule, and characterizing the basis of this action as one in tort, 14 G. Couch, Cyclopedia of Insurance Law Second, § 51:22 at 523 (Anderson ed. 1965); Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv. L.Rev. 1136, 1138 n. 5 (1954), we believe that Minnesota had the most significant contacts. *Compare* Issendorf v. Olson, 194 N.W.2d 750 (N.D.1972). Here the injury occurred in Minnesota, the contract of insurance related to Minnesota property, and the first lawsuit was tried under Minnesota law. Accordingly, we hold that Minnesota law applies.

C. *Minnesota Law—Bad Faith Failure to Settle.*

Under Minnesota law it is clear that:

A liability insurer which assumes control of the right of settlement of a claim against its insured under a policy which gives it the exclusive right to defend and settle may become liable in excess of its policy limits if it fails to exercise "good faith" in considering an offer to settle the claim within the policy limits.

Lange v. Fidelity & Casualty Co. of New York, 290 Minn. 61, 185 N.W.2d 881, 882 (1971). *See also* Herges v. Western Cas. & Surety Co., 408 F.2d 1157, 1161 (8th Cir. 1969); Keeton, Liability Insurance and Responsibility for Settlement, *supra,* 67 Harv.L.Rev. at 1136; 14 G. Couch, Cyclopedia of Insurance Law Second, *supra,* § 51:129 at 625–626; Anno., Duty of Liability Insurer to Settle or Compromise, 40 A.L.R.2d 168 (1955).

The Minnesota courts have defined this duty as follows:

The duty to exercise "good faith" with respect to the decision whether to accept an offer of settlement within the policy limits requires the insurer to view the situation as it would if there were no policy limits applicable to the claim, including the obligation to give equal consideration to the financial exposure of both the insured, whether solvent or insolvent, and the insurer, and the obligation to inform the insured, in the manner in which he would be advised if he consulted private counsel, in detail of the poten-

tial consequences of a deficiency judgment and of the potential conflict between the interests of the insurer and the insured.

Lange v. Fidelity & Casualty Co. of New York, *supra*, 185 N.W.2d at 882.

In this case, it appears, three offers to settle were made to Truck by Miss Ngan's attorney: 1) an offer for $25,000 shortly after the accident, 2) an offer for $45,000 sometime thereafter, and, 3) an offer for $25,000 during trial. For the moment, it will be assumed that the offers were viable and the question of the viability of the offers is discussed *infra*. In this case the Riskes proposed to prove bad faith failure to settle in three ways: 1) inadequate investigation, 2) inadequate evaluation of the claim, and, 3) inadequate consideration of the insured's interest. These devices for proving bad faith are standard analytical measures with respect to this question. *See* 14 G. Couch, Cyclopedia of Insurance Law Second, *supra*, §§ 51:10–51:18 at 514–520.

### 1. Inadequate Investigation.

The Riskes argued that Truck could not adequately determine whether to accept an offer to settle since it was ignorant of the extent of Miss Ngan's injury. As evidence of this contention the Riskes argue that Truck's attorney did not take the deposition of Miss Ngan's doctor. Instead Truck relied upon a medical report which indicated that the doctor had first established Miss Ngan's disability to be 25% in her right arm. At trial the doctor changed his testimony and indicated the disability could be as much as 60% in the right arm.

The Riskes called an expert witness by the name of Donald R. Hansen. Hansen, an attorney, was qualified as an expert in the field of personal injury law. It was his opinion that "good standards of practice" required that Truck's counsel depose the doctor. Truck on the other hand called two other lawyers, qualified in the personal injury field as experts, who testified that such a deposition procedure was unusual and not required.

It is undisputed that in order to evaluate the merits of an offer to settle one must be in possession of enough facts to make an accurate evaluation of the extent of injury. *See, e. g.*, Maryland Casualty Co. v. Elmira Coal Co., 69 F.2d 616, 619 (8th Cir. 1934); 14 G. Couch, Cyclopedia of Insurance Law Second, *supra*, § 51:13 at 516; Anno., Duty of Liability Insurer to Settle or Compromise, *supra*, 40 A.L.R.2d at 208 § 13[a]. In this case, testimony from an expert witness indicated that the counsel for Truck should have deposed the doctor. While this evidence could be disbelieved on the basis of Truck's counter-testimony, it was at least a factor which the jury was entitled to consider.

### 2. Evaluation of the Claim.

Closely related to the allegation of improper investigation is the Riskes' contention that Truck evaluated Miss Ngan's claim in bad faith in that Ngan clearly had a strong case against the Riskes on both issues of liability and damages. We emphasize that:

> [I]t has frequently been recognized that the fact that the claimant had a very strong case against the insured on both these issues [liability and damages] has some tendency to show that the insurer's rejection of the offer was in bad faith.

14 G. Couch, Cyclopedia of Insurance Law Second, *supra*, § 51:18 at 520.

We believe the Riskes adduced substantial evidence from which the jury could conclude that Miss Ngan had an extremely strong case:

a. Truck's own correspondence indicated that Miss Ngan would be likely to have "a very strong jury appeal" and, "we are going to find the jury in an extremely generous and sympathetic mood."

b. It's correspondence also indicated there was a valid potential for excess exposure, and the company

recognized the Ngan case was large and dangerous.

c. Its correspondence further indicated "talk about contributory negligence will be rather meaningless." The Riskes' expert witness, Hansen, testified that his evaluation of the case indicated Miss Ngan was not contributorily negligent.

d. Hansen further testified his evaluation of Ngan's claim indicated Louis Riske was negligent.

e. Hansen testified his evaluation of the case indicated there was no chance that Jerry Riske would be held not liable.

f. Hansen also concluded the Riskes' co-defendant Arctic would be held not liable.

g. Hansen testified the probable jury verdict was between thirty to fifty thousand dollars in excess of policy limits.

Of course Truck produced persuasive evidence that its evaluation of the claim was made in good faith. But, as we have previously suggested, we must view the evidence in the light most favorable to the Riskes.

### 3. Equal Consideration of the Insured's Interests.

There is substantial evidence from which the jury could conclude that Truck totally ignored the Riskes and proceeded to consider the Ngan suit in terms of its own interest solely.

First, Minnesota law is clear that when:

[d]etermining the good faith of the insurer, an important question is *whether the insurer informed the insured of all proceedings, including communication of settlement offers.* (Emphasis supplied.)

New Amsterdam Casualty Co. v. Lundquist, 293 Minn. 274, 198 N.W.2d 543, 551 (1972). *See also* Lange v. Fi-

delity & Casualty Co. of New York, *supra,* 185 N.W.2d at 886; Larson v. Anchor Casualty Co., 249 Minn. 339, 82 N. W.2d 376, 384 (1957); 14 G. Couch, Cyclopedia of Insurance Law Second, *supra,* § 51:16 at 518; Anno., Duty of Liability Insurer to Settle or Compromise, *supra,* 40 A.L.R.2d at 216–218 § 17.

■ The Riskes adduced substantially unrebutted evidence that the first offer to settle for $25,000 was not communicated to the Riskes, and that the third offer to settle during trial for $25,000 was not communicated to the Riskes. Truck's brief, without citation to the record, indicates that the Riskes were informed of the $45,000 offer to settle during trial. We have some difficulty with this assertion. As we read the record,[1] the only testimony indicating that the Riskes were informed of any settlement negotiations appears to have been the testimony of Truck's attorney that he told the Riskes, during the first day of trial, he had offered Miss Ngan's counsel $20,000 to settle. This testimony does not indicate that the Riskes were informed of Miss Ngan's offer. In any event, waiting until trial to communicate the offer to the Riskes is not timely notice, and we have so held in a similar case. Herges v. Western Cas. & Surety Co., *supra,* 408 F.2d at 1162.

■ Second, Louis Riske testified that Truck's attorney told him, during the third day of trial, that, in the event of an excess judgment, Truck would be liable since it had rejected an offer to settle for $40,000. The district court discounted this evidence of bad faith because "[a]t best, it could be considered an admission of bad faith by an agent which would not be binding on his principal unless supported by some evidence." Riske v. Truck Insurance Exchange, *supra,* 351 F.Supp. at 765. We frankly do not understand this contention. Truck commissioned the attorney

---

1. Although this case was presented to the Court on a wholly inadequate appendix and a supplemental appendix, this Court has fully reviewed the original files of the case including the full transcript.

to represent the interests of the Riskes and Truck, including discharging the attorney's legal duty under Minnesota law to inform the Riskes of settlement negotiations. As a consequence, we believe that such a statement, if made, is binding on Truck, at least for the purpose of showing its bad faith in failing to settle the case. *See, e. g.,* C. McCormick, McCormick on Evidence § 267 at 643–644 (Cleary ed. 1972).

■ Third, Minnesota law clearly requires that an insurance company view settlement offers as if there was no policy limit. Lange v. Fidelity & Casualty Co. of New York, *supra,* 185 N.W.2d at 884. Truck's attorney wrote Truck's Branch Claims Manager:

Dear Dick:

Dick, I have your request that we give you our thinking in regard to the value of this file, and what offer we feel should be made.

In summarizing the applicable factors, we find as follows:

\* \* \* \* \* \*

9. We have $50,000.00 available coverage.

This letter was written some time *after* Miss Ngan's counsel had first offered to settle for $25,000.

■ Fourth, we note that Truck emphasizes the fact that the Riskes consulted with independent counsel. This fact is said to buttress Truck's claim that the Riskes were aware of what was going on in the lawsuit. While this evidence is certainly relevant, we do not believe it to be conclusive. We fail to see how independent counsel could be very effective when Truck adopted a policy of not informing the Riskes of the settlement offers (within the policy limits) received from Ngan's counsel. In Duke v. Hoch, 468 F.2d 973, 979 (5th Cir. 1972), the Court held that where an insurer furnished a defense to an insured in a suit for both damages covered by the policy and damages not covered, the presence of insured's own counsel did not dispense with the necessity of insur-

er's counsel discharging his responsibility to disclose fully, before proceeding, the divergence of interest between the insured and insurer arising from a question relative to whether damages were or were not allocated. The Court noted that:

Section 4(b) of the Statement of Principles of the ABA and the Conference Committee on Adjusters states:

The companies and their representatives, including attorneys, will inform the policyholder of the progress of any suit against the policyholder and its probable results. If any diversity of interest shall appear between the policyholder and the company, the policyholder shall be fully advised of the situation. *Id.*

We think the rationale of the *Duke* case is fully applicable to this case since we can conceive of few other circumstances where the conflict of interest between the policyholder and the company is more acute than when a settlement offer within policy limits is rejected by the company. *See* Lange v. Fidelity & Casualty Co. of New York, *supra,* 185 N.W. 2d at 886. We finally note that the Riskes' consultation with independent counsel could hardly be characterized as retaining counsel for the purpose of defending the Riskes. Counsel did not appear at trial, and, from the testimony, it appears that counsel was only consulted when Truck informed the Riskes of the happening of an event.

In this connection, we note that Truck emphasizes that its attorney testified that he informed Louis Riske, during the first day of trial, that the company had offered to settle for $20,000. The attorney said that Riske replied, that he certainly did not think "he owed anyone any money like that." It is argued that this evidence demonstrates that the Riskes' own evaluation of Ngan's claim was consistent with Truck's and therefore such evidence tends to support Truck's claim that it gave the Riskes'

interest equal consideration. We agree that this evidence is supportive of Truck's argument, but in light of the other extensive evidence, particularly the failure to inform the Riskes of Ngan's offers to settle within the policy limits, we believe the jury could properly find for the Riskes in this respect. We further note that there was at least some suggestion in the record that the only conversation Louis Riske clearly remembered having with Truck's attorney about settlement matters was during the third day of trial when Riske testified that Truck's attorney told him that Truck would be liable in the event of an excess judgment.

■ In conclusion, we believe that there was substantial evidence from which a jury would be entitled to draw the conclusion that Truck acted in bad faith.

#### D. *Viability of the Offers.*

Truck alternately contends that Ngan made no viable offers to settle, and hence Truck cannot be charged with liability for failing to investigate them, evaluate them, or consider the insured's interest with respect to the offers.

##### 1. The $25,000 Offer.

By letter dated December 9, 1968, Ngan's counsel offered to settle the suit for $25,000. However, Ngan's counsel was under the erroneous impression that the policy limits were for $25,000. Accordingly, Truck argues that it cannot be charged with liability for not accepting the offer since Ngan's counsel did not understand the true facts. We reject this argument for a number of reasons.

First, by not telling the Riskes of this offer Truck foreclosed the Riskes from the opportunity of demanding that the company settle the case within the real policy limits. Second, there is evidence in this case that the company's attorney purposely withheld disclosing the policy limits for a time until he was forced by a court order to make the disclosure. The reason given was "Onerousness."

Thus it was extremely difficult for Ngan's attorney to make a realistic offer of settlement:

> Liability may be predicated upon a refusal to disclose policy limits as will enable an injured party to make an offer of settlement.

14 G. Couch, Cyclopedia of Insurance Law Second, *supra,* § 51:10 at 48 (Anderson ed. 1972). *See also* Cernocky v. Indemnity Ins. Co. of North America, 69 Ill.App.2d 196, 216 N.E.2d 198, 205–206 (1966).

Still further, the claim that Truck did not accept the $25,000 offer because it was based upon an erroneous factual understanding of claimant's counsel, is refuted by the fact that Truck, through its attorney, offered $8,500 at a time when Ngan's counsel did not know the true policy limits. It is not entirely clear whether Truck's attorney knew that Ngan's attorney was ignorant of the true policy limits when he made the $8,500 offer. But he made the offer at the request of Mr. Olson, a claims manager. The $8,500 offer was made on June 25, 1969. Olson knew that Ngan's counsel was unaware of the real policy limits by at least April 11, 1969. Ngan's counsel did not find out the true policy limits until December, 1969.

##### 2. The $45,000 Offer.

Ngan's counsel made a verbal offer to settle for $45,000. Although Truck raises some argument about the firmness of the offer, the jury was entitled to believe the offer was firm. Hansen, the Riskes' expert, testified that the offer was firm. Even the insurance company's counsel seemed to concede that the statement was a demand: "I construed Mr. Pearson's statements to, in effect, be a demand . . . ."

The insurance company responds additionally that it had the right to reject this offer because Truck had a right to seek contribution from the Riskes' co-defendant, Arctic, and Arctic had consistently refused to settle for anything more than the costs of the lawsuit. The case relied upon is Mendota Electric Co. v.

New York Indemnity Co., 175 Minn. 181, 221 N.W. 61 (1928), where the court held that there was no bad faith when the insurance company did not contribute the maximum amount of its liability, but only a portion thereof, because it believed that the co-defendant should contribute an equal sum. In that case the insured made up the difference, settlement was made, and the insured sued the insurance company for the amount he contributed. Of course the difference between the *Mendota Electric* case and the instant case is that in the former it was clear that the insured was informed of the settlement negotiations in order that he could contribute to settlement. The record in this case lacks such clarity, and there is good reason to believe that the Riskes were not informed of the $45,000 offer at the time it was made.

### 3. The $25,000 Offer at Trial.

During the third day of trial Ngan's attorney offered to settle only against the Riskes. Truck raises two objections to this offer.

First, that it would have been unethical to accept the offer because it was contingent upon the jury not being told of the settlement in order to preserve the possibility of a verdict against Arctic. No authority is cited for this proposition. By not telling the Riskes of this offer, as was clearly the case, the Riskes were foreclosed from demanding that Truck secure a ruling from the trial judge as to the propriety of such an agreement, or otherwise demanding that Truck attempt to revise the proposed agreement in such a way that it would be acceptable to Ngan and the trial court. In any event, even if the offer could not have been accepted because it would have constituted fraudulent or unethical conduct, the evidence that the company did not communicate the offer to the Riskes is still persuasive evidence of bad faith. Since the company did not raise the fraud issue at the time the offer was made, it can hardly be contended

that Truck rejected the offer on these grounds. As a consequence, this evidence could be considered by the jury with respect to the other offers to settle in determining whether Truck adopted a policy of not informing the Riskes about Ngan's settlement offers.

Second, it is argued that this offer would not have protected the Riskes. In Minnesota it appears that a covenant not to sue, which was offered here, permits contribution between joint tort feasors if the settling tort feasor has not paid his fair share. Employers Mutual Cas. Co. v. Chicago, St. P., M. & O. Ry., 235 Minn. 304, 50 N.W.2d 689, 693 (1953). Thus it is argued that Truck could not have accepted the offer since the offer, if accepted, might not have protected the Riskes.

However, it appears that a proper type of release could have been worked out. In fact, during the trial of this case Truck's counsel indicated that a proper type of release was known as a "Pierringer type release." *See* Pierringer v. Hoger, 21 Wis.2d 182, 124 N.W.2d 106 (1963). Therefore, when Truck failed to apprise the Riskes of the offer, it was impossible for them to consult their private attorney in order that he might suggest the proper form of release. Furthermore, Ngan's attorney fully expected Truck to draw up the covenant. And even Truck's own claims manager once suggested "a special release or *covenant not to sue* leaving Mr. Pierson (sic) open with his claim direct against Arctic . . . ." (Emphasis supplied.) Truck's argument that it was trying to protect the Riskes in this respect may well have been considered disingenuous by the jury. There was evidence to support such a conclusion.

As a consequence, we conclude that Truck was presented with sufficiently viable offers from Ngan's counsel as to require their disclosure to the Riskes.

### E. *Damages.*

Truck advances an argument that the Riskes proved no damages since they en-

tered into an agreement with Ngan to bring this action to satisfy the excess judgment by which Ngan agreed to completely discharge the Riskes from further liability without regard to the outcome of this litigation.

 We think this contention is without merit for two related reasons. First, the Riskes agreed to prosecute the pending suit in exchange for a discharge and satisfaction of their debt to Ngan. However, the discharge and satisfaction by express written agreement "shall be effective as of the conclusion of the proceedings against [Truck] . . . ." Thus from a plain reading of the agreement the Riskes remained liable at the time the jury returned the verdict, and the Riskes continue to remain liable. Only when these proceedings are concluded will the debt be discharged and satisfied.

This interpretation of the agreement is clearly in accord with Minnesota law. The agreement here recounts that the Riskes are "unable to pay the balance of the judgment against them . . . ." In Minnesota, even an insolvent insured has a cause of action against an insurance company for a bad faith failure to settle resulting in an excess judgment. Lange v. Fidelity & Casualty Co. of New York, *supra*, 185 N.W.2d at 885. The Minnesota court adopted this rule because it feared that an insurance company would disregard the insured's interest if it knew that because of the insured's financial condition, the insured would not have to satisfy an excess judgment. And since even an insolvent insured suffers injury, such a result could not be sanctioned. Accordingly, we believe the agreement did not extinguish the Riskes' right to sue or claim damages.

 For the reasons hereinbefore expressed the judgment vacating the jury verdict is reversed, and the case remanded for entry of judgment pursuant to the jury verdict.[2]

2. Entry of judgment on the jury verdict pursuant to Fed.R.Civ.P. 58 starts the ten-day period permitted for filing a motion for new trial. Fed.R.Civ.P. 59(b). Since Truck was entitled to ten days from the entry of the Riske judgment to file a new trial motion, and since no judgment on the verdict was entered when the district court acted favorably to Truck, we believe that Truck is not now foreclosed from filing a motion for new trial. Accordingly, we specify that upon entry of judgment in favor of the Riskes pursuant to our mandate, Truck shall have ten days in which to file a motion for new trial.