**RANGER COUNTY MUTUAL INSURANCE COMPANY,**
Appellant,

v.

**John Wesley GUIN, et al., Appellees.**

**No. 9289.**

Court of Appeals of Texas,
Texarkana.

Oct. 22, 1985.

As Corrected on Denial of Rehearing
Dec. 17, 1985.

Richard Grainger, Grainger, Patterson, Howard & Colley, Tyler, for appellant.

Ralph Zeleskey, Lufkin, for appellees.

GRANT, Justice.

Ranger County Mutual Insurance Company appeals an adverse judgment in an action involving the *"Stowers* doctrine." Ranger raises issues concerning the no evidence and the insufficiency of the evidence, the form of the special issues, the lack of an opportunity to settle the primary claim, and the awarding of exemplary damages on the basis of gross negligence.

In 1976, Billy Wayne Peden purchased a policy from Ranger County Mutual Insurance Company providing liability limits of $10,000.00 per person for bodily injury and $10,000.00 property damages. John Wesley Guin, while employed by Peden and operating a truck insured by Ranger, collided with a truck owned by Eagle Trucking Company and operated by Robert Fitch. Judgment in the prior suit awarded Fitch $216,232.35 and Eagle Trucking Company $47,000.00 against Peden and Guin. Separate appeals were consolidated in the Tyler Court of Appeals in 1979. The Texas Su-

preme Court reversed in part and affirmed in part. On remand, the Court of Civil Appeals reversed and remanded to the trial court. Guin and Peden were represented by Ranger's retained counsel, Otto Ritter of Longview. Also named as defendants in the primary suit were Texas Bitulithic Company, G & G Construction Company and United Drilling Company. Ritter also defended G & G Construction Company. His law partner, John Smith, defended Texas Bitulithic. All defendants remained in the lawsuit until the next to last day of trial. At that time, the judge granted motions for instructed verdicts as to G & G Construction Company, Texas Bitulithic Company, and United Drilling Company.

Blake Erskine and Blake Bailey represented Fitch and Eagle Trucking Company. They offered to settle the primary suit for personal injuries against Peden, Guin, and G & G Construction Company for $19,500.00. They also offered to settle the property damage of Eagle Trucking for $19,500.00. Otto Ritter, the attorney retained by Ranger Insurance Company to defend insureds Peden and Guin, rejected that offer on the basis that it was conditional. The jury returned a total verdict of $263,232.35 which was in excess of the Ranger policy limits.

Peden and Guin as insureds under the policy issued by Ranger Insurance Company brought this suit against Ranger under the *Stowers* doctrine alleging that Ranger was negligent in failing to settle the primary lawsuit within its policy limits. The jury returned a verdict of $450,000.00 against Ranger (being $175,000.00 actual damages and $50,000.00 punitive damages awarded to Peden and a like amount awarded to Guin).

Ranger argues in Point of Error 4 that Special Issue No. 1 was improperly submitted to the jury and could not support a judgment because the issue was evidentiary in nature and not an ultimate issue in the case and further urges in Points of Error 10(a)–(3) that the trial court erred in overruling its objections to Special Issue No. 1. A careful review of *G.A. Stowers*

*Furniture Co. v. American Indem. Co.*, 15 S.W.2d 544 (Tex.Comm'n App.1929, opinion adopted), reveals that Special Issue No. 1 was proper and formed a solid foundation for the judgment rendered. The trial court submitted one issue to the jury concerning the handling of the claim against the insurer.[1] This special issue was accompanied by a number of explanatory instructions which informed the jury of the duties and responsibilities owed by the insurer to the insured.

The trial court properly instructed the jury on the law.[2] *G.A. Stowers Furniture Co. v. American Indem. Co.*, supra; *Chancey v. New Amsterdam Cas. Co.*, 336 S.W.2d 763 (Tex.Civ.App.-Amarillo 1960, writ ref'd n.r.e.); *Highway Ins. Underwriters v. Lufkin-Beaumont Motor Coaches, Inc.*, 215 S.W.2d 904 (Tex.Civ.App.-Beaumont 1948, writ ref'd n.r.e.).

Ranger has cited *Chancey v. New Amsterdam Cas. Co.*, supra; *Globe Indem. Co. v. Gen-Aero, Inc.*, 459 S.W.2d 205 (Tex. Civ.App.-San Antonio 1970), *writ ref'd*

*n.r.e. per curiam*, 469 S.W.2d 164 (Tex. 1971). In the *Chancey* case, the jury found that the insurer was not negligent in refusing to settle the suit. The jury failed to answer the remaining three special issues which dealt with whether or not the insurer was negligent in failing to settle the claim within the policy limits after the entry of the judgment. The appellate court in *Chancey* indicated that there were no Texas cases which applied the *Stowers* doctrine where an offer of settlement had been refused after judgment. The court further found that the finding made by the jury resolved the ultimate issue of the case, because it did not restrict the time for settling before the jury verdict or entry of judgment. For these reasons, the unanswered subsequent issues were immaterial. While the issue in *Chancey* is more narrowly drawn, the decision does not mandate such specificity. The issue in the *Globe* and *Highway Insurance* cases is also couched in terms of specifically asking the jury if the case should have been set-

---

**1.** Special Issue No. 1 states:

Do you find from a preponderance of the evidence that the Defendant, RANGER MUTUAL INSURANCE COMPANY, was negligent in the manner in which it handled the claim and lawsuit asserted against its insureds, BILLY WAYNE PEDEN and JOHN WESLEY GUIN?

Answer: "We do" or "We do not."

**2.** "NEGLIGENCE" as used in this special issue means the failure to exercise that degree of care and diligence which an ordinarily prudent person would exercise in the management of his own business. If an ordinarily prudent person in the exercise of ordinary care, as viewed from the standpoint of the insured, would have settled the case, but the defendant failed or refused to do so, then the defendant is negligent. The duty to settle implies the duty to negotiate.

You are instructed that the Defendant, RANGER COUNTY MUTUAL INSURANCE COMPANY, by the nature of its insurance contract with its insureds, BILLY WAYNE PEDEN and JOHN WESLEY GUIN, assumed the responsibility to act as the exclusive and absolute agent of the insured in all matters pertaining to the questions in litigation and, as such agent, the Defendant is held to that degree of care and diligence which an ordinary prudent person would exercise in the management of his own business.

You are further instructed that when an insurance company hires an attorney, pursuant to an insurance contract, to represent an insured in litigation, then that attorney is deemed, under the law, to be the sub-agent of the insurance company. As such, the insurance company is as responsible to the insured for the conduct of the sub-agent with reference to the litigation as the insurance company is for its own conduct. Therefore, the insurance company is liable to the insured for damages caused to the insured, if any, by the negligence, if any, of the sub-agent in conducting the affairs of the insured with reference to the litigation.

Where an insurance company acts as the agent of its insureds in the defense of a claim for monetary damages, it is bound under the law to give the rights of its insureds at least as great consideration as it does its own.

You are further instructed that under the law of Texas, an insurance carrier is required to exercise ordinary care in considering whether an offer of settlement should be accepted and whether it should offer the liability limits of its insurance policy but it is not necessarily a failure to exercise ordinary care merely because its decision proves to be wrong by reason of a jury verdict; in other words, the duty to exercise ordinary care leaves room for an error in judgment, without negligence necessarily resulting therefrom.

tled within the policy limits by a person of ordinary prudence. In the present case, this was covered by the instruction which read as follows:

> You are further instructed that under the law of Texas, an insurance carrier is required to exercise ordinary care in considering *whether an offer of settlement should be accepted and whether it should offer the liability limits of its insurance policy* but it is not necessarily a failure to exercise ordinary care merely because its decision proves to be wrong by reason of a jury verdict; in other words, the duty to exercise ordinary care leaves room for an error in judgment, without negligence necessarily resulting therefrom. (Emphasis added.)

Review of the issue in *Globe Indemnity*, shows that the essential language contained in that special issue was contained in the trial court's explanatory instructions accompanying Special Issue No. 1. The manner of submission of Special Issue No. 1 in the present case was proper.

■ Point of Error 10 alleges that there was no evidence of a standard to evaluate reasonable and prudent handling of insurance claims in lawsuits. Ranger cites two medical malpractice cases on this argument. *Coan v. Winters*, 646 S.W.2d 655 (Tex.App.-Fort Worth 1983, writ ref'd n.r. e.); *Smith v. Guthrie*, 557 S.W.2d 163 (Tex.Civ.App.-Fort Worth 1977, writ ref'd n.r.e.). The rule requiring expert testimony in malpractice cases as well as other type cases, to establish a standard generally applies when the allegations of the plaintiffs do not fall within common understanding of laypersons. The rule does not apply where the acts of the defendant fail to meet a standard understood by a layperson. *Nevauex v. Park Place Hosp., Inc.*, 656 S.W.2d 923 (Tex.App.-Beaumont 1983, writ ref'd n.r.e.).

■ Furthermore, the standards of handling of insurance claims were presented to the jury by the testimony of representatives of the insurance company, as well as the attorney Blake Erskine who testified he had represented insurance companies defending people involved in accidents for many years and was familiar with the duties owed to the insureds.

In Points of Error 5 and 6, Ranger asserts that it had no opportunity to settle the primary claim for a sum within the insured's policy limits. Ranger bases its argument upon the wording of the settlement letter which reads as follows:

> We hereby offer to settle the claim of Robert Fitch for personal injuries against Bill Peden and G & G Construction and agree not to collect any judgment against Johnny Guinn (sic) for the total settlement sum of $19,500.00. We further offer to settle on the same terms and basis for $19,500.00 for property damage to the Eagle Trucking Company vehicle. This will finally settle the claim of Robert Fitch together with the Workmen (sic) Compensation carrier's subrogation claim and Eagle Trucking's property damage claim. The above offer is based on your representation that the insurance policies involved have limits of 10/20/10. If limits are otherwise, we offer to settle for such limits less $500.00. We will settle with either defendant separately for one-half of the above offer.

This language is ambiguous, because of the last sentence which offers to settle "with either defendant separately...." This would indicate there were only two defendants involved in the offer, but there were three. However, Ritter indicated in his testimony that he understood that it meant Peden and Guin were included together because they were covered by one policy while G & G Construction Company was covered by a different policy (not Ranger). Ritter's basis for not settling was because he interpreted the offer to be conditional.

Ranger contends that because this letter was a conditional offer of settlement, it had no opportunity to settle the primary claim against its insureds and cannot be held liable for excess damages under the *"Stowers* doctrine" as a matter of law.

As authority under these points, Ranger cites *Jones v. Highway Ins. Underwriters*, 253 S.W.2d 1018 (Tex.Civ.App.-Galveston 1952, writ ref'd n.r.e.). In that case, there was no prior approval for the contingent settlement offer obtained from the intervening insurance company. Therefore, the offer of settlement in that case was contingent and conditional upon obtaining subsequent approval. The court in the *Jones* case held that such a conditional offer was not sufficient for establishing liability on a *Stowers* theory.

The written offer of settlement as to Peden was not a conditional offer. It was not conditioned upon any contingent occurrence; was made with full authority; and would have resulted in a full release of Peden from any liability in excess of policy limits. The problem was the insurance coverage of Peden also involved Guin.

The offer as to Johnny Guin was not in terms of a full release, but rather in terms of an agreement not to collect any judgment against him. Blake Erskine and Blake Bailey, plaintiff's counsel in the prior suit, testified concerning the drafting of the settlement letter in question. They explained that because of the law as it existed at that time, they could not "release" Guin without releasing their claim of vicarious liability against Texas Bitulithic. After the Texas Supreme Court's decision in *Knutson v. Morton Foods, Inc.*, 603 S.W.2d 805 (Tex.1980), release of an employee no longer constitutes release of the employer. Such was not the case at the time of the settlement negotiations in the primary suit. Thus, the settlement letter was drafted to avoid the possible effect of releasing Texas Bitulithic (and possibly one of the other companies involved) from liability.

The facts present an issue as to whether or not the insurer actually had an opportunity to make an effective settlement. There is no question that the letter constituted a settlement offer of the claims against Guin within the policy limits. Furthermore, the offer would have relieved Guin from the risk of financial liability for damages, but it would not have relieved him from the possibility of having a judgment entered against him (even though it was agreed that the judgment would not be collected from him).

■ Texas rejected the good faith test of insurer's liability which is used in the majority of the states in a case of this nature, and instead adopted a negligence standard. *Highway Ins. Underwriters v. Lufkin-Beaumont Motor Coaches, Inc.*, supra. Texas law requires that in determining negligence, consideration be given to the interest of both the insurer and the insured. *Danner v. Iowa Mut. Ins. Co.*, 340 F.2d 427 (5th Cir.1964).

■ We must first consider the evidence of the existing circumstances prior to the judgment in the first suit to determine if Ranger and its attorney should have been willing to tender the policy limits. Based upon the significant injuries of the plaintiff in the original suit and property damages that far exceeded the policy limits, the potential measure of damages far exceeded the policy limits. As to liability, Ritter told the insurance company that he had never felt that he could win the lawsuit and that they never had a chance. Ritter also told the company that it was a hard lawsuit because of the facts developed in discovery. He had told the company that if they could get a standoff on the basis of comparative negligence, they would be "lucky as hell." Mr. Ritter testified that he would have settled the case for $20,000.00. A memorandum in Ranger's file dated prior to the trial says,

Thinks jury verdict would be in excess of our limits, but won't say how much [referring to information obtained from Ritter].

Ritter hasn't worried about the case. Told him to offer our limits, and tell Hanover we have done so to avoid *Stowers* doctrine.

There is sufficient evidence to indicate that Ranger should have settled within the policy limits if it had an opportunity to do so.

Ranger also contends that it offered to settle within the policy limits.

An attorney is faced with a difficult situation in fulfilling his duty to represent the insurer as well as the insured, and in this case the firm was also representing third parties. The facts are disputed as to the information given to the insureds. The court is required under the case of *Burk Royalty Co. v. Walls,* 616 S.W.2d 911 (Tex. 1981) to consider only the evidence favorable to the jury's findings to determine if the evidence is legally sufficient to support the findings.

On October 1, 1976, Ranger sent a letter to Peden advising him that the amount sued for was $150,000.00 which was in excess of the liability coverage and that he had a right to retain his own attorney to associate with Ritter. A copy of this letter was also sent to Guin.

Guin testified that he was never informed that the pleadings had been amended to increase the claim against him for more than $250,000.00 and that Ritter had told him that he thought they would win and that he was never told that there was a possibility of damages being awarded against him in the amount of $263,000.00.

Peden testified that he asked Ritter if he needed an attorney and that he was told that he did not because the insurance company was representing him. He further testified that he was never told that there was a likelihood of an excess judgment being rendered against him or that the amended pleadings asked for in excess of $250,000.00. According to his testimony, Ritter had informed him that things were going "great" and that "we didn't have anything to worry about." Ritter had also told him that "we have the lawsuit won."

Under the terms of the insurance policy, Ranger had "the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage...." But according to the policy the company was not obligated "to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements."

Guin testified that Ritter did not explain to him that an offer of settlement had been made within the policy limits with the agreement that the judgment against him would not be collected. Peden testified that Ritter did not ask his opinion about anything and that he did not read the demand letter during the original trial.

The attorney Bailey testified as follows:

Q What did Mr. Ritter say to that when you made him that offer, what did he do?

A The first thing he did was laugh, and then I believe it was Mr. Erskine said, "Aren't you at least going to tell your insureds about this?"

Q His insureds being Peden and Guin?

A Yes, sir. The jury was out of the room at the time, Mr. Peden was sitting behind us on one of the benches.

Q Much like he is behind me here now?

A Yes, sir, except he was sitting at the far extreme end, I think about three benches back. I believe his wife was with him. So Mr. Ritter picked up the—we were all sitting at one counsel table—picked up the offer, stepped behind there and hollered over at him and said, "They want $10,000.00 of your money; do you want to pay it to them?" And he said, "No."

Q Ten thousand of your money?

A Yes, sir.

Bailey further testified that Ritter did not show the offer to Peden or Guin.

Bailey's testimony indicated that Ritter had made an earlier offer, and "he was using authority for Guin and Peden to try to get rid of our cause of action against the other defendants."

There was no testimony to indicate that Peden and Guin were not provided a good defense from the standpoint of the investigation of the case and the trial of the case. Their contentions hinge upon the settle-

ment of the case and include allegations of conflicts of interest. The record does not indicate that there was a conflict of interest in the actual trial of the case as to the positions taken by the various parties represented by the Ritter firm. The potential conflicts arise in the settlement proceedings. It was beneficial to Ritter's other clients to insist upon a full release of Guin, because this release could have the effect of also releasing the other parties who were represented by him. Furthermore, if the insurance company could avoid the *Stowers* doctrine by taking the position that this offer was conditional then it could gamble a sizeable amount of the insureds' money in an effort to save a relatively small amount of its own by the slim chance that there might be comparative negligence.

As to Ranger's position on Ritter also representing G & G Construction Company, notes in their file made during the discovery period read as follows:

Hanover insures G & G Constr[uction]—they have some exposure on their part. However, they can only get stuck through *Guin*. G & G *is* a party-defendant, but they have no attorney representing them. Ritter is handling—awkward but they can only get stuck if Guin does.

In the case of *Automobile Underwriters' Ins. Co. v. Long*, 63 S.W.2d 356 (Tex. Comm'n App.1933, opinion adopted), the court in addressing a different fact situation said that when counsel were employed by the insurance company, they become the insured's unqualified attorneys of record, and as such they owe him the duty to conscientiously represent him, and if the point is reached where his interests and those of the company conflict, the insured should have been so informed and given the opportunity to protect himself. Also cited in *Employers Cas. Co. v. Tilley*, 496 S.W.2d 552 (Tex.1973). This rule was incorporated into the Canons of the Code of Professional Responsibility promulgated by the Supreme Court. The Canons do not prohibit the representation of multiple

clients, but require that the clients be kept fully advised of any potential conflict.

■ The insured, under the terms of the policy, does not select the attorney and has no authority or control over him. Through the policy the insured has designated the carrier as his agent for purposes of handling the defenses of the suit. The insurer, in dealing with an offer of compromise, acted as an agent of the insured, and was thus under a duty to exercise due care. *Highway Ins. Underwriters v. Lufkin-Beaumont Motor Coaches, Inc.*, supra. The company is responsible for the actions of the attorney selected by it to defend the suit. *Millers Mut. Fire Ins. Co. v. Alamo Express, Inc.*, 548 S.W.2d 85 (Tex.Civ.App.-Houston [1st Dist.] 1977, no writ).

■ By assuming control of the litigation, the insurer must act in good faith and with reasonable diligence and caution. An agency is a fiduciary relationship. *Donnie Douglas, Individually and d/b/a/ Blackhawk Prod. v. Aztec Petroleum Corp.*, 695 S.W.2d 312 (Tex.App.-Tyler, 1985) (not yet reported). Thus, the company owes a fiduciary duty to the insureds, and their rights to be informed did not end when the initial letter was sent out by Ranger explaining that the suit involved more than policy limits and that they had a right to obtain counsel of their choice.

The same factors are usually relied upon in cases finding breach of good faith as those finding negligence on the part of the insurer. 44 Am.Jur.2d *Insurance* § 1400 (1982). There are a number of cases from other jurisdictions recognizing that the failure to inform the insured of a compromise offer can be a factor of negligence or bad faith which results in damage to the insured. *Ward v. State Farm Mut. Auto. Ins. Co.*, 539 F.2d 1044 (5th Cir.1976); *Young v. American Cas. Co. of Reading, Pa.*, 416 F.2d 906 (2d Cir.1969), *cert. dism'd*, 396 U.S. 997, 90 S.Ct. 580, 24 L.Ed.2d 490 (1970); *Brown v. Guarantee Ins. Co.*, 155 Cal.App.2d 679, 319 P.2d 69 (1957); *Bollinger v. Nuss*, 202 Kan. 326, 449 P.2d 502 (1969); *Alt v. American Family Mut. Ins. Co.*, 71 Wis.2d 340, 237

N.W.2d 706 (1976); *Hilker v. Western Auto. Ins. Co.*, 204 Wis. 1, 231 N.W. 257 (1930).

A case involving an issue similar to the fact situation in the present case is *Riske v. Truck Ins. Exch.*, 490 F.2d 1079 (8th Cir. 1974). An offer was made in that case to settle within the policy limits, but contingent upon the jury not being told of settlement to preserve the possibility of a judgment against another defendant. (There were also other offers which were not communicated to the insured.) The court said:

> By not telling the Riskes of this offer, ... the Riskes were foreclosed from demanding that Truck secure a ruling from the trial judge as to the propriety of such an agreement, or otherwise demanding that Truck attempt to revise the proposed agreement in such a way that it would be acceptable to Ngan and the trial court.

(The court in the *Riske* case also indicates that insured should be kept informed of offers in excess of the policy limits to give them an opportunity to contribute to the settlement.)

The degree of care and diligence required under a contract giving the insurer control of the defense is the same as that which an ordinary prudent person would exercise in the management of his own business. *G.A. Stowers Furniture Co. v. American Indem. Co.*, supra. (Language to this effect was used in the instructions to the jury in the present case.)

■ Ranger was given the opportunity to relieve itself from liability within the policy limits and to relieve Guin of financial liability rather than take the risk of a possible judgment in excess of the policy limits. Inasmuch as the attorney for Ranger takes the position that the only reason that the settlement offer was not accepted was because it would have resulted in a judgment with the agreement not to collect rather than a full release, then only Guin had an interest at stake in making this decision. Once Ranger made the decision that it should offer the policy limits, then it should not be allowed to gamble to the insured's detriment. To permit Ranger to do so would not provide the insured the representation to which he is entitled. Under these circumstances, Guin should have been fully advised about the ramifications of the offer and given an opportunity to make the decision of whether or not he was willing to settle on the basis set forth in the offer. The failure to do so provides a sufficient basis for the jury's finding that Ranger was negligent in the manner in which it handled the claim and lawsuit against its insureds.

Ranger contends that there is no evidence, or alternatively there is insufficient evidence to support the jury's affirmative finding in response to Special Issue No. 1. In reviewing a "no evidence" point, the Court considers only the evidence tending to support the finding, viewing it in the light most favorable to the finding and giving effect to all reasonable inferences therefrom and disregarding all contrary or conflicting evidence. *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400 (Tex.1981). An "insufficient evidence" point requires the Court to consider and weigh all of the evidence. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). In determining a greater weight point, the Court must consider all the evidence and remand if the verdict is so against the greater weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, supra.

The evidence supports the jury's affirmative finding to Special Issue No. 1.

In Points of Error 7–9, Ranger contests the jury's finding of proximate cause as not supported by legally or factually sufficient evidence, and further attacks the finding as against the greater weight and preponderance of the evidence. The jury determined that Ranger was negligent, and there was sufficient evidence to show that the judg-

ment plus accumulated interest against Peden and Guin in the prior suit resulted from the failure of Ranger to settle that suit within the policy limits.

Ranger contends that exemplary damages are not permissible in this case because it is based upon breach of contract. As previously discussed, the duty in this type of case is created by contract, but the cause of action is based upon the tort of negligence.

They further contend that there is no evidence to substantiate the gross negligence finding and resulting exemplary damages. The Supreme Court in the case of *Linkenhoger v. American Fidelity & Cas. Co.*, 152 Tex. 534, 260 S.W.2d 884 (1953), while not allowing exemplary damages for gross negligence in that case, did indicate that it would be permissible in this type of case if the facts warranted an award for gross negligence. There is evidence to indicate that the Ritter law firm placed itself in a position of difficulty in considering the settlement offer because of the conflicting interests of its multiple clients and did not communicate this to his clients. The acts of Ritter are imputed to Ranger on agency law principles.[3] There is also evidence that the attorney advised the insureds to make a fraudulent post-judgment transfer of their assets. Such advice can be considered as evidence of bad faith by the insurer. *Noshey v. American Auto Ins. Co.*, 68 F.2d 808 (6th Cir.1934). This type of conduct, coupled with the failure to properly advise the insureds and protect them against the liability in excess of the insurance coverage, is a sufficient basis for the jury to find that there was a conscious indifference to the rights of the insureds. *Burk Royalty Co. v. Walls*, supra.

The trial court's judgment is affirmed.

3. Ranger does not contend that there was insufficient evidence that it authorized or ratified the acts of its agent, as is required to hold a corporation liable in exemplary damages for the acts of an agent. *See Ledisco Financial Serv., Inc. v.*

*Viracola*, 533 S.W.2d 951 (Tex.Civ.App.-Texarkana 1976, no writ). Neither does it complain because the jury was not instructed on those elements of the exemplary damage recovery.